SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Righthaven LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company, | Case No.: 2:10-cv-02155-JCM-PAL |
| Plaintiff, | **RIGHTHAVEN LLC'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| AZKAR CHOUDHRY, an individual; and PAK.ORG, an entity of unknown origin and nature, | |
| Defendants. | |
| AZKAR CHOUDHRY, an individual; | |
| Counterclaimaint, | |
| v. | |
| RIGHTHAVEN LLC, a Nevada limited-liability company, | |
| Counter-defendants. | |

Righthaven LLC ("Righthaven") hereby opposes Defendants Azkar Choudhry's ("Choudhry") and Pak.org's ("PAK" and collectively referred to with Choudhry herein as "Defendants")) Motion to Dismiss or, Alternatively, Motion for Judgment on the Pleadings, or, Alternatively, Motion for Summary Judgment (the "Motion"). (Doc. # 9.) This opposition is

1

based on the pleadings and papers on file in this action, any oral argument this Court may allow, and any other matter upon which this Court takes notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants take that rather cautious procedural approach of couching the Motion in a variety forms: (1) as a request for dismissal under Federal Rule of Civil Procedure 12(b)(6)("Rule 12(b)(6)"); (2) as a request for entry of judgment on the pleadings under Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"); and (3) as request for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56").  As explained herein, when distilled to its core, and in view of the declarations submitted in support, the Motion is really a request for entry of summary judgment under Rule 56.  Defendants are simply not entitled to the relief sought in the Motion under Rule 56 – particularly at this stage of the proceedings.

Substantively, in support their request for dismissal, Defendants also employ a novel approach of acknowledging that the infringement asserted by Righthaven was actually committed by a third party, Make Magazine. (*See, e.g.,* Doc. # 9 at 16.)  This fact, however, does not absolve Defendants of liability in this case because the copyrighted graphic illustration was still displayed without authorization on their website and their acts of editorial control resulted in the unauthorized displayed that serve as the basis for Righthaven's copyright infringement claims.

Defendants additionally seek dismissal of Righthaven's copyright infringement claims based on the defense of fair use.  Defendants' arguments and relied upon evidence clearly demonstrate that they are not entitled to a finding of fair use as a matter of law, which is what they ask this Court to conclude.

Defendants' final attack is on Righthaven's ability to seek surrender of the domain name used to post the unauthorized copy of the graphic image at-issue.  Righthaven maintains that such relief may be appropriate under the Court's equitable powers despite Defendants' arguments to the contrary.  Whether such relief should be granted in this case, however, is a matter that should be decided after sufficient discovery has been conducted and Righthaven's

claims have been fully adjudicated.  It is simply premature to do so at this stage of the proceedings.

## II.      STATEMENT OF FACTS

### A.      *Rule 12(b)(6) Standards.*

With regard to Defendants' request for dismissal pursuant to Rule 12(b)(6), such a motion "is viewed with disfavor and is rarely granted."  *See Gilligan v. Jamco Dev. Corp,* 108 F.3d 256, 249 (9th Cir. 1997) (internal quotations marks omitted).  Dismissal pursuant to Rule 12(b)(6) is only appropriate in extraordinary cases.  *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981); *Cauchi v. Brown,* 51 F.Supp.2d 1014, 1016 (E.D. Cal. 1999); *United States v. White,* 893 F.Supp. 1423, 1428 (C.D. Cal. 1995).  The "court's role at the 12(b)(6) stage is not to decide winners and losers or evaluate the strength or weakness of claims . . . ." *Jacobson v. Hughes Aircraft Co.,* 105 F.3d 1288, 1292 (9th Cir. 1997).  Thus, courts do not consider whether the plaintiff will ultimately prevail under Rule 12(b)(6), but only whether the plaintiff is entitled to offer evidence in support of the claims alleged.  *Allison v. California Adult Auth.,* 419 F.2d 822, 823 (9th Cir. 1969).  In fact, dismissal is only "appropriate when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint."  *See Burnett v. Twentieth Century Fox Film Corp.,* 491 F.Supp.2d 962, 966 (C.D. Cal. 2007).  All allegations asserted in the complaint must be construed in favor of the non-moving party and all material allegations – including any reasonable inferences drawn from same – must be accepted as true by the Court under a Rule 12(b)(6) analysis. *See id.*  Where dismissal is granted, leave to amend should be granted unless doing so is futile.  *In re Silicon Graphics, Inc. Sec. Litig.,* 183 F.3d 970, 991 (9th Cir. 1999).

The Court is prohibited from considering material outside the complaint under Rule 12(b)(6) unless it converts the motion into one seeking summary judgment.  *See Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 925 (9th Cir. 2001); *Beliveau v. Caras,* 873 F.Supp. 1393, 1395 (C.D. Cal. 1995).  Such a conversion is generally disfavored if "(1) the motion comes quickly after the complaint was filed, (2) discovery is in its infancy and the nonmovant is limited in obtaining and submitting evidence to counter the motion, or (3) the nonmovant does

not have reasonable notice that a conversion might occur." *Rubert-Torres v. Hospital San Pablo, Inc.,* 205 F.3d 472, 475 (1st Cir. 2000).

As argued below, the request for dismissal pursuant to Rule 12(b)(6) must be denied because the facts before the Court do not demonstrate that Defendants are entitled to judgment as a matter of law in view of the allegations asserted in Righthaven's Complaint, which must be accepted as true and all reasonable inferences therefrom drawn in its favor.  Moreover, to the extent the Court considers matters outside the pleadings in deciding the Motion, it must be decided under Rule 56.  As argued below, a host of genuine issues of material fact preclude entry of summary judgment in favor of Defendants under Rule 56.  Accordingly, the Motion must be denied.

**B.**     ***Rule 12(c) Standards.***

The Court's analysis under Rule 12(c) is essentially the same as that applied under Rule 12(b)(6), *i.e.*, judgment on the pleadings is appropriate when, even if all material facts in the pleading are assumed to be true, the moving party is entitled to judgment as a matter of law.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir. 1989). Moreover, all inferences reasonably drawn from the facts asserted in the complaint must be construed in favor of the responding party. *See General Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir. 1989).  The Court's analysis under Rule 12(c) is limited to the allegations contained in the Complaint and must convert the motion into a request under Rule 56 if matters outside the pleadings are considered. *See Hal Roach Studios, Inc.,* 896 F.2d at 1550.

Under a Rule 12(c) analysis, it is immaterial whether the court believes the plaintiff will succeed at trial.  *Wager v. Pro,* 575 F.2d 882, 884 (D.C. Cir. 1976).  A rule 12(c) motion must be denied unless it appears "to a certainty" that no relief is possible under any state of facts the plaintiff could prove in support of their claim.  *Mostowny v. United States,* 966 F.2d 668, 672 (Fed. Cir. 1992).

As argued below, the request for dismissal pursuant to Rule 12(c) must be denied because the facts before the Court do not demonstrate that Defendants are entitled to judgment as a matter

4

of law in view of the allegations asserted in Righthaven's Complaint, which must be accepted as true and all reasonable inferences therefrom drawn in its favor.  Moreover, to the extent the Court considers matters outside the pleadings in deciding the Motion, it must be decided under Rule 56.  As argued below, a host of genuine issues of material fact preclude entry of summary judgment in favor of Defendants under Rule 56.  Accordingly, the Motion must be denied.

###    C.    ***Rule 56 Standards.***

Entry of summary judgment is only proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  This burden is only discharged through the submission of admissible evidence in support of the claimed basis for relief.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *see also Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir. 1990).  As required on a motion for summary judgment, the facts are construed "in the light most favorable to the party opposing the motion."  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  Moreover, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  *Anderson,* 477 U.S. at 249.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."  *Id.* at 256.

Rule 56 must be construed "with due regard . . . for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury."  *Celotex Corp.,* 477 U.S. at 327.  Summary judgment is proper only after there is an adequate opportunity for discovery. *Id.* at 326.  This is particularly true when evidence is presented by a moving party in support of summary judgment on matters exclusively within their possession or based on their knowledge and there has not been an adequate opportunity to conduct discovery on those matters.  *See Anderson,* 477 U.S. at 257.  In fact, "where the facts are in possession of

the moving party a continuance of a motion for summary judgment for purposes of discovery

should be granted as a matter of course." *International Raw Materials, Ltd. v. Stauffer Chem.*

*Co.,* 898 F.2d 946, 949 (3d 1990)(internal quotation marks omitted).

Application of the foregoing standards in view of the record before the Court

demonstrates that summary judgment is unwarranted based on Defendants' arguments that no

volitional act of infringement was committed or that their infringing conduct falls within the Fair

Use exception.   This conclusion is particularly warranted given the fact discovery has yet to be

conducted in this case by Righthaven.

## III.   STATEMENT OF FACTS

The facts alleged in Righthaven's Complaint are important in that the Court must accept

the allegations as true, and it must construe all reasonable inferences from the alleged facts in its

favor, in deciding the Motion under Rule 12(b)(6) or Rule 12(c).  *See Hal Roach Studios, Inc.,*

896 F.2d at 1550; *General Conf. Corp. of Seventh-Day Adventists,* 887 F.2d at 230.  As argued

below, Defendants are not entitled to dismissal under Rule 12(b)(6) or Rule 12(c) in view of the

allegations asserted in the Complaint.  Moreover, dismissal under Rule 56 is unwarranted given

the numerous issues of material fact raised by Defendants' Motion and neither party has

conducted discovery in this case given that Defendants filed this Motion in connection with their

initial appearance in this action.

Righthaven filed this copyright infringement action on December 13, 2010.  (Doc. # 1.)

Righthaven asserts that it is the owner of the copyrighted Righthaven is the owner of the

copyright in the illustration entitled: "Vdara death-ray" (the "Work"). (*Id.* at 3, Ex. 1.)

Righthaven contends that Pak.org is, and has been at all times relevant to this lawsuit,

identified by the current registrar, GoDaddy.com, Inc. ("GoDaddy"), as the registrant of the

Internet domain found at <paklinks.com> (the "Domain" and the content available through the

Internet at the Domain is referred to herein as the "Website").  (*Id.* at 2.) Mr. Choudhry is, and

has been at all times relevant to this lawsuit, identified by GoDaddy as an administrative contact

and technical contact of the Domain. (*Id.*)

Righthaven contends that on or about October 8, 2010, the Defendants Choudhry and Pak.org displayed an unauthorized reproduction of the Work as part of the content accessible on the Website.  (Doc. # 1 at 3, 5.)  Righthaven further maintains that Defendants' willfully copied the Work without authorization and displayed the unauthorized reproduction on the Domain.  (*Id.* # 1 at 5.) Righthaven has, among other things, sought entry of a permanent injunction and an award of statutory damages against Choudhry and Pak.org.  (*Id.* at 6.)  Righthaven has demanded a jury trial in this case.  (*Id.* at 7.)

## IV.   ARGUMENT

### A.   *Defendants' Volitional Act Argument Must be Rejected.*

Defendants argue that they cannot be found liable for direct copyright infringement because they merely provided the unauthorized copy of the Work directly to end users via inline linking.  (Doc. # 9 at 16-17.)  As support for this assertion, Defendants have submitted 34-pages of source code related to the unauthorized post along with the Choudhry's declaration.  (Doc. # 9-1; 9-2 at 2-36.)  Defendants are not entitled to dismissal under Rule 12(b)(6) or 12(c) based on the required consideration of Choudhry's declaration and the attached 34-pages of source code because these materials are outside of Righthaven's Complaint.  Moreover, dismissal under Rule 56 is unquestionably improper given the host of genuine issues of material fact raised by Choudhry's declaration and the 34-pages of source code – particularly given that absolutely no discovery has been conducted since the Motion was filed in connection with the Defendants initial appearance in this case.

### 1.   *Dismissal under Rule 12(b)(6) or Rule 12(c) is improper given the Court's required consideration of materials outside of Righthaven's Complaint.*

Defendants' are not entitled to obtain dismissal under Rule 12(b)(6) or Rule 12(c) because to do so the Court would be required to rely on materials outside of the Righthaven's Complaint.  While Defendants try to traverse this procedural hurdle by relying upon cases which permit courts to consider materials attached to or referenced in a party's pleading when ruling on a motion under Rule 12(b)(6) or Rule 12(c) through the incorporation by reference doctrine,

there is absolutely no basis to support application of this doctrine to Choudhry's declaration and the 34-pages of source code attached to the declaration.  Absent application of the incorporation by reference doctrine, this Court must consider Defendants' Motion as a request for summary judgment under Rule 56.

The law is clear that the Court's analysis under either Rule 12(b)(6) or Rule 12(c) is limited to the allegations contained in the Complaint and must convert the motion into a request under Rule 56 if matters outside the pleadings are considered.  *See Hal Roach Studios, Inc.,* 896 F.2d at 1550.  The Court may properly consider documents attached to the Complaint under its analysis without converting the Motion to a request for summary judgment.  *See id.* at 1555 n.19. The "incorporation by reference" doctrine permits a court to "take into account documents whose contents are alleged in a complaint, but which are not physically attached to the [plaintiff's] pleading."  *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005)(internal quotation marks omitted).   As noted by the panel in *Knievel*:

> We have extended the "incorporation by reference" doctrine to situations in which the plaintiff's claim depends on the contents of a documents, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though plaintiff does not explicitly allege the contents of that document in the complaint.  *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998) (holding that the district court properly considered documents attached to a motion to dismiss that described the terms of plaintiff's group health insurance plan, where plaintiff alleged membership in the plan, his claims depended on the conditions described in the documents, and plaintiff never disputed their authenticity); *see also Horsley v. Feldt,* 304 F.3d 1125, 1135 (11th Cir. 2002) (taking into account newspaper article containing allegedly defamatory statement under the "incorporation by reference" doctrine where it was "central" to plaintiff's claim, defendant attached it to the motion for judgment on the pleadings, and plaintiff did not contest authenticity).  The rationale of the "incorporation by reference" doctrine applies with equal force to [I]nternet pages as it does to printed material.

*Id.*  The panel in *Knievel* determined that it could consider the viewable content of webpages linked to the allegedly defamatory statements at-issue, the authenticity of which were not contested by the plaintiffs, under the "incorporation by reference" doctrine.  *Id.* at 1077.

Here, Defendants ask the Court to extend the "incorporation by reference" doctrine to a place where no court has gone before in order to support their request for dismissal under Rule 12(b)(6) and/or Rule 12(c). They are asking the Court not only to consider the webpage screen print that shows the unauthorized display of the Work, which has been attached to Righthaven's Complaint, but they are asking the Court to also consider Choudhry statements concerning the underlying computer source code for webpage used to display the unauthorized copy of the Work along with 36-pages of computer source code. (Doc. # 9 at 26-31.) Defendants have cited no cases to this Court that hold such an in-depth inquiry about matters so far afield of the complaint is authorized under the "incorporation by reference" doctrine. The reason for this is simple – no such case law exists, otherwise Defendants would have brought such authority to the Court's attention in their Motion.

Consideration of Choudhry's declaration and the accompanying computer source code is equally improper under Rule 12(b)(6) and Rule 12(c) because Righthaven contests their authenticity. As set forth above, even if the Court were to consider extending the "incorporation by reference" doctrine to Choudhry's declaration and to the computer source code, it is improper to do so where the authenticity of such materials are contested. *See Knievel,* 393 F.3d at 1076-77. Let there be no mistake – Righthaven contests the authenticity of the computer source code and all of Choudhry's statements contained in his declaration which relate to the source code and its alleged acquisition.

In so contesting, Righthaven notes that it is not contesting the authenticity of a document, photograph or some other easily evaluated material. Rather, Righthaven is contesting the content of page upon page of computer source code allegedly used to disseminate content on the Website along with Choudhry's statements and conclusions concerning the computer source code. Proper evaluation of this information is certainly beyond the capability of Righthaven or its counsel and will certainly require it to engage an expert witness in the field of computer programming to evaluate the authenticity of and functionality of the computer source code, along with the veracity of Choudhry's statements made about the computer source code and his acquisition of it. Righthaven certainly has not had an opportunity to conduct such an evaluation as this case is

at its inception.  A case conference under Federal Rule of Civil Procedure 26(f) has not been held, no discovery has been undertaken, and the computer source code was not otherwise made available to Righthaven before Defendants filed their Motion.  Accordingly, there is no basis for the Court to extend the "incorporation by reference" doctrine to the 36-pages of computer source code and the accompany Choudhry declaration under either Rule 12(b)(6) or Rue 12(c).  The Motion must be denied on these grounds as a result.

> **2.**          ***Genuine issues of material fact exist that preclude entry of summary judgment on Defendants' lack of volition argument under Rule 56.***

As argued above, the Court cannot consider the Choudhry declaration and its accompanying computer source code under the "incorporation by reference" doctrine.  As such, it is compelled to consider these materials under a Rule 56 analysis.  When this analysis is properly performed, numerous genuine issues of material fact are raised that prohibit entry of summary judgment – particularly at a stage of the proceedings where no discovery has been conducted.

As a threshold matter, Righthaven maintains that its allegations coupled with the Defendants' admission that an unauthorized copy of the Work appeared on the Website, but that this act of infringement was derived from Make Magazine (*See* Doc. # 9 at 16), establishes sufficient facts to justify denying summary judgment.  Quite simply, Righthaven has presented the Court with evidence of its rights to the Work and the unauthorized display of the Work on Defendants' Website.  (Doc. # 1 at 3-5; Doc. # 1-1.)  Defendants do not contest the authenticity of Righthaven's exhibits attached to its Complaint.  Defendants also do not contest that an unauthorized copy of the Work was available to users of the Website.  Defendants try to skirt these clearly evident and indisputable facts by claiming that they are not liable for copyright infringement because they did not take any action to cause the unauthorized display.[1]  Instead,

---

[1] Righthaven certainly contests Defendants' interpretation of the legal standard required to prove direct infringement liability.  In this regard, Righthaven notes that Defendants at a minimum exercised editorial control over the content appearing on the Website.  Stated alternatively, the unauthorized copy of the Work did not randomly appear on the Website – even if it was

Defendants point the proverbial finger of liability toward Make Magazine, which is not a party to this action.  Defendants point-the-finger defense is not a legitimate basis for them to escape liability, but it may certainly justify Defendants' right to seek indemnification or contribution from Make Magazine.  Defendants' indemnification and contribution rights aside, the facts before the Court, when construed in the light most favorable to Righthaven as is required under a Rule 56 analysis, support a finding of direct copyright infringement.

Righthaven's assertion that summary judgment is improper given the facts before the Court is only further strengthened when the Court considers the host of genuine issues of material fact raised by the Choudhry declaration and the accompanying source code.  Defendants' argument is that they did not perform any volitional acts sufficient to give rise to direct copyright infringement liability.  (Doc. # 9 at 16-23.)  In this regard, Defendants are that they merely linked the unauthorized copy of the Work and did not display or store the unauthorized copy on its server.  (*Id.*)  In order to support this conclusion, Defendants ask the Court to accept statements contained in the Choudhry declaration along with the 36-pages of computer source code submitted with the declaration.  (*Id.*)  These materials unquestionably give rise to at least the following genuine issues of material fact:

1) Is the computer source code submitted for the Court's consideration authentic?

2) Is the computer source code from the date in question and does it relate to the alleged unauthorized display of the Work?

3) Does the computer source code cause the Website to display or store images of any duration?

4) Is the technology allegedly employed by Defendants identical to the inline linking technology used by Google in the *Perfect 10 v. Amazon* case upon which they rely?

5) Does the computer source code merely provide a link that the end-user's Internet browser loads and displays from Make Magazine's website?

---

displayed via a RSS.  Rather, at some point, Defendants selected such content and are responsible for monitoring content that appears on their Website.  These are all volitional acts.

6)  What editorial control did Defendants have over the content that appeared on their Website?

7)  What interaction did the alleged RSS feed have with the Website?

8)  Assuming the Website had interaction with the RSS feed, what control did Defendants have over this interaction?

9)  Did Choudhry properly preserve the computer source code?

10) Did Choudhry make any alterations or modifications to the source code prior to allegedly printing it out or storing it?

11) Was the unauthorized copy of the Work stored in any means on Defendants' computer servers or servers under their control?

12)  What are the subscription service terms for the RSS feed allegedly used to display the unauthorized copy of the Work?

13)  How was the RSS feed allegedly used to display the unauthorized copy of the Work selected by Defendants?

14)  Did Choudhry in fact learn of the alleged infringement from a reporter or did he have prior notice of the infringement?

15)  Did the unauthorized copy of the Work appear on Defendants' Website as alleged in paragraph 29 of Choudhry's declaration?

16)  When did Defendants subscribe to Make Magazine's RSS feed and what was disclosed prior to or in connection with their subscription?

17)  What are the operative lines of the computer source code for determining the manner in which the unauthorized copy of the Work was displayed on the Website?

18)  Does the computer source code perform the functionality as described in paragraphs 34 and 35 of Choudhry's declaration?

19) Was the unauthorized copy of the Work stored on Make Magazine's servers at all relevant times as alleged in paragraph 33 of Choudhry's declaration?

Resolution of virtually any one of the issues may reveal that Defendants took some action sufficient to support direct copyright infringement liability.  This information is exclusively

under the control of or in the possession of Defendants.  Moreover, this case is at its inception.

Thus, while it is true some of this information is generally described in Choudhry's declaration,

Righthaven has not been allowed to examine the veracity of his statements through a deposition

or otherwise require Defendants to produce materials through written discovery requests because

no discovery has been conducted by the parties.  Rather, Defendants have moved for dismissal as

part of their initial appearance in this case.   As the Court is well aware, summary judgment is

proper only after there is an adequate opportunity for discovery. *See Celotex Corp.,* 477 U.S. at

326.  This is particularly true when evidence is presented by a moving party in support of

summary judgment on matters exclusively within their possession or based on their knowledge

and there has not been an adequate opportunity to conduct discovery on those matters.  *See*

*Anderson,* 477 U.S. at 257.  In view of the host of genuine issues of material fact raised by

Choudhry's declaration and the accompanying computer source code, Defendants' request for

entry of summary judgment on the grounds that they did not commit a volitional act to support

direct copyright infringement liability must be denied.

### B.   *Defendants' Fair Use Argument Must be Rejected.*

Defendants next argue that Righthaven's Complaint should be dismissed, as a matter of

law, because the alleged acts of infringement are exempt from liability under the fair use doctrine

(Doc. # 9 at 25-33.)  As support for this assertion, Defendants have relied upon the Choudhry's

declaration (Doc. # 9-1) and the declaration of Benjamin A. Costa ("Costa", Doc. # 9-3), who is

Defendants' counsel.  As with their volitional act argument, Defendants are not entitled to

dismissal under Rule 12(b)(6) or 12(c) based on the required consideration of Choudhry's

declaration and Costa's declaration, which introduce materials outside of Righthaven's

Complaint. (*See, e.g.,* Doc. # 9 at 28:7, which cities to Exhibits M, N, and O to Costa's

declaration in support of Defendants' fair use argument.) Moreover, dismissal under Rule 56 is

unquestionably improper given the host of genuine issues of material fact raised by Choudhry's

declaration and by Costa's declaration – particularly given that absolutely no discovery has been

conducted since the Motion was filed in connection with the Defendants initial appearance in this

case.

13

1.   ***Dismissal under Rule 12(b)(6) or Rule 12(c) is improper given the Court's required consideration of materials outside of Righthaven's Complaint.***

Defendants' are not entitled to obtain dismissal under Rule 12(b)(6) or Rule 12(c) on fair use grounds because to do so the Court would be required to rely on materials outside of the Righthaven's Complaint.  Unlike their volitional act argument, Defendants do not try to traverse this procedural hurdle by relying upon cases which permit courts to consider materials attached to or referenced in a party's pleading when ruling on a motion under Rule 12(b)(6) or Rule 12(c) through the incorporation by reference doctrine.   Rather, the simply cite to the Choudhry and Costa declarations as support for their fair use arguments without demonstrating how the Court is allowed to consider this evidence without being required to perform its analysis under Rule 56 because these materials are outside of Righthaven's Complaint.  (*See, e.g.,* Doc. # 9 at 26:27, 27:21, 28:7, 32:3-4, 33:6, 33:9.)  The Court is required to consider Defendants' fair use arguments under Rule 56 as a result.  Accordingly, Defendants' request for dismissal under Rule 12(b)(6) and Rule 12(c) must be denied.

2.   ***Genuine Issues of Material Fact Exist Concerning Defendants' Assertion That Their Infringing Conduct Qualifies as Fair Use.***

Defendants have alternatively asked this Court to enter summary judgment in their favor by finding that their infringing conduct qualifies, as a matter of law, as fair use. (Doc. # 9 at 17-25.)  Once again, Defendants' own evidence submitted and arguments made support denial of the Motion because genuine issues of material fact are raised.  This conclusion is particularly warranted in this case because absolutely no discovery has been conducted by the parties and the information relied upon by Defendants is exclusively within their custody or control.  *See Celotex Corp.,* 477 U.S. at 326; *Anderson,* 477 U.S. at 257.

Fair use is an affirmative defense upon which a defendant bears the burden of proof and the burden of persuasion.  *See Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1158 (9th Cir. 2007).  "In ruling on a motion for summary judgment, the judge must view the evidence

presented through the prism of the substantive evidentiary burden." *Anderson,* 477 U.S. at 254.

As explained by the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"):

> "Fair use is a mixed question of law and fact.  If there are no
> genuine issues of material fact, or if, even after resolving all issues
> in favor of the opposing party, a reasonable trier of fact can reach
> only one conclusion, a court may conclude as a matter of law
> whether the challenged use qualifies as a fair use of the
> copyrighted work."

*Los Angeles News Serv. v. KCAL-TV Channel 9,* 108 F.3d 1119, 1120 (9th Cir. 1997)(quoting

*Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148, 1150 (9th Cir. 1986)).

Further complicating entry of summary judgment in fair use cases is that the Court's

inquiry is not controlled by a bright line test.  Specifically, when a copyright defendant asserts

the affirmative defense of fair use, the district court must consider the following factors: "(1) the

purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and

substantiality of the portion used in relation to the work as a whole; and (4) the effect of the use

upon the potential market for the work or the value of the work." *A&M Records, Inc. v. Napster,

Inc.,* 239 F.3d 1004, 1014 (9th Cir. 2001) (internal quotation marks omitted); *see also* 17 U.S.C.

§ 107.  The fair use doctrine requires a "case-by-case analysis."  *Campbell v. Acuff-Rose Music,

Inc.,* 510 U.S. 569, 577 (1994).  Courts are required to consider and weigh all four factors when

conducting a fair use analysis.  *Id.*  Conducting such an analysis as a matter of law requires that

controlling facts be presumed or admitted.  *See Fisher v. Dees,* 794 F.2d 432, 435-36 (9th Cir.

1986).  Here, Defendants' evidence gives rise to numerous issues of material fact that preclude

entry of summary judgment in their favor on the issue of fair use.

> ### a.     *The purpose and character of use raises genuine issues of*
> ### *material fact.*

Turning to the first factor in the fair use analysis, which calls for consideration of "the

purpose and character of the use, including whether such use is of a commercial nature or is for

nonprofit educational purposes." 17 U.S.C. § 107(1).  In considering the purpose and character

of the use, courts must determine whether the alleged infringing publication, when comparatively

viewed with the copyrighted work, "merely replaces the object of the original creation or instead adds a further purpose or different character." *Napster, Inc.,* 239 F.3d at 1015.  Stated differently, the "purpose and the character of use" factor involves resolving the question as to "whether the allegedly fair use was 'transformative,' *i.e.,* whether the second use 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.'" *Los Angeles News Serv. v. CBS Broad., Inc.,* 305 F.3d 924, 938 (9th Cir. 2002) (*quoting Campbell,* 510 U.S. at 579).  This inquiry has a wide-ranging impact on the fair use analysis: "the more transformative the new work, the less will be the significance of the other factors, like commercialism, that may weigh against a finding of fair use." *Campbell,* 510 U.S. at 579.

To begin with, Defendants utilized the unauthorized copy of the Work for the exact same purpose as the source publication – to inform and educate members of the public about a unique solar phenomenon associated with the Vdara hotel.  (*See* Doc. # 9 at 26, stating that the unauthorized copy of the Work ws "designed to educate readers on the properties of the 'solar death rays.'")  These similar purposes – between that of the source publication's dissemination of the Work and the Defendants' display of the unauthorized version on the Website – at a minimum raises a genuine issue of material fact as to this aspect of the first fair use factor's analysis.  While Defendants attempt to argue that the unauthorized post targeted technology-orientated primarily residing in Pakistan and India, which they allege is a different audience from that targeted by the original source publication, this conclusion is supported only by the Choudhry's declaration.  (*Id.* at 26:22-27.)  Righthaven has not been allowed to depose Choudhry and test the veracity of these statements because discovery has yet to commence.  Moreover, Righthaven has been unable to propound written discovery designed to ferret out the locale of those who accessed the Website to view the unauthorized copy of the Work.  That said, it is reasonable to assume, if Choudhry's estimate of almost 500,000 people having accessed the Website, that there will be an overlap between Website users and those primarily targeted by the source publication.

Further demonstrating the impropriety of summary judgment, Defendants' own evidence clearly reveals the unauthorized copy of the work was used for a commercial purpose.  Choudhry admits in his declaration that the Website does make money, although he claims it "approximately broke even in 2009 and 2010 . . . ."  (Doc. # 9-1 at 2 ¶  13.)  Choudhry also admits in his declaration that the page views of the unauthorized copy of the Work generated advertising revenue and that his sub-RSS feeds generate monthly revenue. (*Id.* at 3 ¶¶ 18-19.) Choudhry further acknowledges that approximately 30 users viewed the unauthorized copy of the Work 89 times.  (*Id.* at 3 ¶ 19.) While Defendants attempt to minimize the commercial use related to the unauthorized posting of the Work, it nevertheless was commercial use.  Moreover, for purposes of deciding the Motion, this conclusion can be reached despite Righthaven's inability to conduct discovery given the procedural posture of this case.  That said, Righthaven has not been able to conduct discovery as to any of these allegations made by Choudhry in support of the Motion.

Even in view of Defendants' reliance on advertising revenue and the admitted exposure to such advertisements by the considerable viewers of the unauthorized Work is viewed as only marginal by the Court, the Ninth Circuit has nevertheless held that a "[d]irect economic benefit is not required to demonstrate a commercial use."  *See Napster, Inc.,* 239 F.3d at 1015.  In other words, in the context of fair use, "monetary gain is not the sole criterion . . ." *Worldwide Church of God v. Philadelphia Church of God, Inc.,* 227 F.3d 1110, 1117 (9th Cir. 2000) ("*Worldwide Church*")(emphasis added).  Instead, the threshold for commercial use can be satisfied if the defendant's use of the infringed work generates good will for, and promotes, the defendant's underlying operation. *See Free Republic I,* 1999 WL 33644483, at *15-16 (finding of fair use is supported by "the fact that defendants' web page is enhanced by use of the articles, and that [sic] fact that the copying assists in generating support, both financial and non-financial, for their operation").  This concept is directly applicable at present.

Logic dictates that the Defendants' display of the Work's content on the Website directly enhanced the Website's purpose, helped generate interest in Website's purpose, potentially generated new viewers for the Website, and potentially enhanced the advertising revenues

generated by the ads contained on the Website.   Thus, even if the Court were to accept that only a marginal financial benefit was received by Defendants based on Choudhry's uncontested declaration, there still exists ample issues of material fact that support a finding of commercial use, thereby justifying denial of the Motion under a proper Rule 56 analysis.   In this regard, the Court is again reminded that Righthaven has yet to depose Choudhry or conduct any other discovery because the case is at its inception. Accordingly, significant genuine issues of material fact exist which preclude entry of summary judgment.  These issues of material fact aside, Righthaven maintains that the record before the Court weighs against a finding of fair use as to the first factor.

> **b.**      ***The nature of the copyrighted work is not amenable to summary judgment.***

The second factor in the fair use analysis calls for consideration of "the nature of the copyrighted work." 17 U.S.C. § 107(2).  This factor "turns on whether the work is informational or creative." *Worldwide Church,* 227 F.3d at 1118.  Righthaven asserts that this factor weighs strongly against a finding of fair use, or at a minimum raises a genuine issue of material fact, because Defendants copied the Work without authorization and the subject matter was clearly subject to copyright protection.

To begin with, this case does not involve the unauthorized copying of a news article.  It involves the unauthorized copying of a graphic illustration.  A graphic illustration, like any other work of art, unquestionably involves creative expression and contains copyright protectable content.  Defendants' argument that the Work is purely factual defies logic.  (Doc. # 9 at 27-29.) For example, if two artists were to illustrate the same bowl of fruit sitting on a table using the same colors of ink and the same size paper each of their resulting graphic illustrations would reflect their unique creative expressions.  As such, the resulting graphic illustrations would be capable of obtaining copyright registration and protection against infringement.  Adopting Defendants' interpretation of copyright protectable subject matter, however, these two artists would not be entitled to copyright registration because there are limited means for depicting the bowl of fruit.  There is simply no support for such a conclusion under copyright the law.   In fact,

adopting Defendants' position in this regard would completely eviscerate the scope of protectable copyright subject matter.

Moreover, Defendants' argument that the nature of the Work is purely factual is made without any evidentiary support – admissible or otherwise.  Rather, the Defendants, through their counsel, make assertions concerning the limited means by which the subject matter could be depicted and that further argue that the facts illustrated by the Work involved a "minimal degree of creativity . . ." (Doc. # 9 at 29:7-17.)  Without evidentiary support for these assertions, they cannot serve as the basis for entry of summary judgment in Defendants' favor. *See Orr v. Bank of America, NT & SA,* 285 F.3d 764, 778 (9th Cir. 2002); *Bank Melli v. Pahlavi,* 58 F.3d 1406, 1412 (9th Cir. 1995).

Even if the Court were to assume the Work is largely factual, which it is not, the Defendants are not permitted to commit blatant copyright infringement simply because the Work's highly expressive attributes are coupled with substantial factual content.  The "[c]reation of a nonfiction work, even a compilation of pure fact, entails originality." *Harper & Row Publishers, Inc.,* 471 U.S. at 547.  This protection has been recognized in written news articles, which reflect the reporter's creative endeavors in compiling a piece for dissemination. *Los Angeles Times v. Free Republic,* 54 U.S.P.Q.2d 1453, 1467 (C.D. Cal. Apr. 4, 2000) ("*Free Republic II*").  The Work before the Court, which is a graphic illustration and not a news article, unquestionably contains substantial copyright protectable subject matter despite Defendants' arguments to the contrary.  Accordingly, Righthaven submits that Defendants have failed to establish that the second fair use factor weighs in favor of a fair use finding.  At a minimum, Defendants arguments raise genuine issues of material fact that preclude entry of summary judgment – particularly given the procedural posture of this case.

c.   **The amount and substantiality of the Work taken does not support a finding of fair use amenable to disposition by summary judgment.**

The third factor examined under a fair use analysis requires the Court to consider "the amount and substantiality of the portion used in related to the copyrighted work as a whole." *See* 17 U.S.C. § 107(2).  This factor clearly supports a finding against fair use because Defendants replicated 100% of the Work.

Defendants attempt to skirt their 100% unauthorized replication by asking the Court to perform a calculation in order to find that they only misappropriated 30% of the original.  (Doc. # 9 at 30-31.)  Once again, Defendants make this assertion without any admissible evidentiary support.  The proper inquiry under this factor looks at the portion of the work taken without authorization in relation to the full contents of the original work.  Under this inquiry the answer is simple – Defendants misappropriated 100% of the Work.  Defendants' arguments that they misappropriated only as much as was needed to "educate readers about solar death rays . . ." (*Id.* at 31:6-7) completely misses the mark because this is the same reason why the Work was created and published in the source publication.  Accordingly, Righthaven submits that the third factor weighs against a finding of fair use, thereby supporting denial of summary judgment.

d.   **The fourth fair use factor is not amenable to summary judgment.**

The fourth factor examined under a fair use analysis requires the Court to consider "the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).  As the owner of the copyrighted Work, Righthaven is entitled to a presumption of market harm in light of the commercial elements associated with the Defendants' infringement. *See Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 451 (1984)("*Sony Corp.*").  In view of this presumption and in further view of the commercial nature of Defendants' misappropriation of the Work, summary judgment is completely inappropriate.

As discussed above, the commercial elements surrounding the Defendants' unauthorized display of the Work on the Website, and the commercial elements of the Website in general, are such that material impairment of the Work's market is presumed. (Doc. 9-1 at 3 ¶¶ 18-19.)  In

*Sony Corp.*, the Supreme Court explained that "[i]f the intended *use* is for commercial gain, that likelihood [of market harm] may be presumed." *Sony Corp.,* 464 U.S. at 451.  As discussed earlier, Defendants' admittedly received web traffic related to their unauthorized display of the Work.  While discovery has not been able to be conducted in the extent of this benefit, the Website does unquestionably derive revenue from advertisements placed on the Website.  Moreover, Choudhry admits in his declaration that advertising revenue was generated by page views of the unauthorized copy of the Work. (Doc. 9-1 at 3 ¶¶ 18-19.) Moreover, as also discussed above, posting of the infringing copy of the Work resulted in a commercial advantage by offering the Work free of charge to those visiting the Website.  While subject to discovery, this commercial advantage certainly fostered hopes of attracting support for Defendants' cause and which could additionally result in the organization receiving credibility and goodwill beyond monetary donations of membership revenue. *Cf. Worldwide Church,* 227 F.3d at 1118.  In view of the commercial nature of Defendants' misappropriation of the Work, the Court is compelled, at a minimum, to presume impairment of the Work's market and conclude that the fourth factor weighs against a finding of fair use. *See Sony Corp.*, 464 U.S. at 451.  Accordingly, this factor weighs against a finding of fair use and Defendants are not entitled to entry of summary judgment given the record before the Court.

C.   ***Defendants' Request for Dismissal of Righthaven's Domain Transfer Should be Denied.***

Defendants' final attack on Righthaven's Complaint is directed toward the company's request for transfer of the Domain should it prevail in this action.  (Doc. # 9 at 33-38.) Defendants' attack must be denied.

Righthaven concedes that such relief is not authorized under the Copyright Act.  That concession aside, Righthaven maintains the Court is empowered to grant such relief under appropriate circumstances.  Given the procedural posture of this action, however, Righthaven is unable to ascertain whether surrender of the Website is appropriate.  Accordingly, dismissal of such relief is inappropriate under a Rule 12(b)(6) or a Rule 12(c) analysis.

Righthaven has unquestionably asked this Court to enter equitable relief in the form of a preliminary and permanent injunction. Righthaven has also requested this Court enter such relief as it deems just and appropriate in this action. Thus, it is beyond question Righthaven has asked for and alleged facts sufficient to invoke the Court's equitable powers. More importantly for purposes of deciding the Motion, Righthaven has not sought transfer of the Website as a form of relief exclusively authorized by the Copyright Act. In fact, Righthaven acknowledges that such relief would be subject to the Court's discretion and only upon the presentation of evidence sufficient to justify transfer of the Website.

It cannot be disputed that federal courts are authorized to freeze assets in the aid of ultimately satisfying a judgment in a case. *See* FED. R. CIV. P. 64. Such action may be taken pursuant to federal law or state law. *Id.* The freezing or seizure of assets may be warranted where damages are sought in addition to equitable relief. *See United States ex rel. Rahman v. Oncology Assocs., P.C.,* 198 F.3d 489, 498 (4th Cir. 1999). In fact, a district court may freeze assets before trial to secure the payment of attorney's fees. *See Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.,* 67 F.3d 766, 774-75 (9th Cir. 1995). As recognized by the panel in *Oncology Associates*, "when the plaintiff . . . asserts a cognizable claim . . . or seeks a remedy involving those assets, a court may in the interim preserve the *status quo* pending judgment . . . ." 198 F.3d at 496. Additionally, it is improper to dismiss a requested form of relief under Rule 12(b)(6) or Rule 12(c) as long as the Court can ascertain from the Complaint that some form of relief can be granted. *See Doe v. United States Dept. of Justice,* 753 F.2d 1092, 1104 (D.C. Cir. 1985); *Asher v. Reliance Ins. Co.,* 308 F.Supp. 847, 850 (N.D. Cal. 1970).

As the above authorities demonstrate, the Court is empowered to take action to preserve and marshal assets prior to entry of judgment. The obviously corollary of this is the power to take such action upon the presentation of evidence and entry of judgment. That said, Righthaven has not asked the Court to transfer the Website as part of a preliminary injunction. In fact, Righthaven has not conducted any discovery in this case and has not ascertained whether transfer of the Website is appropriate at any stage of the proceedings or if it will ultimately ask the Court for such relief should it prevail. Dismissal pursuant to Rule 12(b)(6) or Rule 12(c) at the

inception of this case and in view of the Court's inherent ability to grant relief directed to a

defendant's assets, which in this case would potentially include the Website, is wholly improper.

Accordingly, Defendants' request to dismiss this form of relief should be denied.

**V.   CONCLUSION**

For the foregoing reasons, Righthaven respectfully requests the Court deny Defendants'

Motion and grant such other relief as it deems appropriate and just.

Dated this 16th day of February, 2011.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada  89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Righthaven LLC*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 16th day of February, 2011, I caused the foregoing document to be served by the Court's CM/ECF system.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Righthaven LLC*