CHRIS K. RIDDER
CA State Bar Number: 218691 (*pro hac vice*)
Email: chris@rcjlawgroup.com
RIDDER, COSTA & JOHNSTONE LLP
California State Bar No. 218691
12 Geary Street, Suite 701
San Francisco, California 94108
Telephone: (415) 391-3311
Facsimile: (415) 358-4975

CHAD BOWERS
NV State Bar Number: 7283
Email: bowers@lawyer.com
CHAD A. BOWERS, LTD
Nevada State Bar No. 7283
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

Attorneys for Defendant and Counterclaimant
AZKAR CHOUDHRY, and Defendant
PAK.ORG.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited liability company,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AZKAR CHOUDHRY, an individual; and PAK.ORG, a corporation of unknown origin and nature,<br><br>　　　　Defendants.<br><hr>AZKAR CHOUDHRY, an individual,<br><br>　　　　Counterclaimant,<br><br>　　v.<br><br>RIGHTHAVEN LLC, a Nevada limited liability company,<br><br>　　　　Counter-defendant. | Case No. 2:10-cv-02155-JCM-PAL<br><br>**DEFENDANT AND COUNTERCLAIMANT AZKAR CHOUDHRY'S MOTION FOR RECONSIDERATION OF MAY 3, 2011, ORDER DENYING IN PART DEFENDANTS' AND COUNTERCLAIMANT'S MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** |

Defendant and Counterclaimant Azkar Choudhry ("Mr. Choudhry") hereby moves for reconsideration of the Court's May 3, 2011, Order denying in part Defendants' motion to dismiss the Complaint, or in the alternative for summary judgment (the "Order"). This motion is supported by the following Memorandum of Points and Authorities and any oral argument the Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Mr. Choudhry respectfully submits that the Court clearly erred in its consideration of the volitional conduct doctrine. The presence or absence of an inline link is not material to the question of whether Defendants have engaged in the sort of volitional act that may give rise to direct copyright infringement. Accordingly, consideration of the HTML code and other facts relevant to inline linking is not necessary for the Court to rule on volition. The only factual issue relevant to volition is whether the allegedly infringing content appeared automatically on Mr. Choudhry's web site by virtue of Make Magazine's RSS feed. Because Righthaven has raised no genuine issue of material fact on this point, the Court should grant summary judgment in favor of Mr. Choudhry.

### II. LEGAL STANDARD

"A motion for reconsideration must set forth the following: (1) some valid reason why the court should revisit its prior order, and (2) facts or law of a 'strongly convincing nature' in support of reversing the prior decision." *Martinez v. Shinseki*, 2011 WL 9302, at *1 (D. Nev. Jan. 3, 2011) (*citing Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003)). For example, "[r]econsideration may be appropriate if the district court: (1) is presented with newly discovered evidence, (2) has committed clear error or the initial decision was manifestly unjust, or (3) there has been an intervening change in controlling law." *Id*. (*citing Nunes v. Ashcroft*, 375 F.3d 805, 807-08 (9th Cir. 2004)); *see also, School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

## III. ARGUMENT

Mr. Choudhry respectfully submits that the Court has committed clear error to the extent its Order conflates lack of culpability based on the presence of an inline link (on the one hand) and lack of culpability based on the absence of a volitional act by Mr. Choudhry (on the other hand). Specifically, the Order states:

> Defendants' argument as to volition depends on the court concluding that, as a matter of law, the alleged infringement here was actually "inline linking." Having already held [in this Order] that the court cannot make this determination as a matter of law, the court similarly cannot conclude that no volitional act occurred.

[Order, at 4.] The Court's Order is clearly erroneous because the presence or absence of an inline link is immaterial to the question of whether a volitional act sufficient to give rise to copyright infringement liability has occurred. [See Defs.' Reply, Dkt. No. 24, at 9-10.] Inline linking and volitional conduct are separate and independent defenses, that must be considered separately. In analyzing the lack of volitional conduct, the Court <u>must assume that the allegedly infringing work was copied in its entirety to Mr. Choudhry's server</u>, i.e., that there was <u>no</u> inline linking.

In the volitional conduct cases cited by Defendants, inline linking was not at issue, yet each of those courts held, in the summary judgment context, that there was no direct infringement due to the absence of volitional conduct with respect to the allegedly infringing work.

For example, in *Field v. Google Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006), the content at issue was not linked inline; it was actually copied to Google's servers (specifically, to the Google cache) and subsequently, in response to a user request, "sent to the user." *Field*, 412 F. Supp. at 1115. Nevertheless, the court granted summary judgment in Google's favor because the copying was nonvolitional. *See Id.* at 1115 ("[t]he automated, non-volitional conduct by Google in response to a user's request does not constitute direct infringement under the Copyright Act.").

Similarly, in *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs,* 907 F. Supp. 1361 (N. D. Cal. 1995), the material was not linked inline. Rather, the Church of Scientology materials at issue were copied to defendant Netcom's server of by virtue of its subscription to Usenet. Specifically, the court found that "[a]ccording to a prearranged pattern established by Netcom's

1 software, Erlich's initial act of posting a message to the Usenet results in the automatic copying
2 of Erlich's message . . . onto Netcom's computer. . ." *Id*. at 1367. Nevertheless, the Court held
3 that such conduct could not, as a matter of law, create direct infringement liability as to Netcom.
4 The court granted summary judgment in Netcom's favor, because "Netcom did not take any
5 affirmative action that directly resulted in copying plaintiffs' works other than by installing and
6 maintaining a system whereby software automatically forwards messages received from
7 subscribers. . ." *Id*. at 1368. Even assuming the Infographic in the instant case was copied to Mr.
8 Choudhry's server (as the court must assume in the context of the nonvolitional conduct
9 analysis), the fact pattern in *Netcom* is virtually identical to the instant case: Mr. Choudhry's
10 only affirmative action was to configure his vBulletin software to automatically post Make
11 Magazine's RSS updates; he took no action specifically directed to the Infographic that
12 Righthaven now claims to own. [[Choudhry Decl., Dkt. No. 9-1, at 3-4; Defs.' Mot. to Dismiss,
13 Dkt. No. 9, at 6, 12-13; Defs.' Reply at 10 n.7.]

14      In *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004), there was also
15 no inline linking: "CoStar's copyrighted photographs were posted by LoopNet's subscribers on
16 LoopNet's website." *CoStar*, 373 F.3d at 546. Nevertheless, the court granted summary judgment
17 in favor of LoopNet because LoopNet's conduct was nonvolitional. LoopNet operated a web
18 site, wherein (1) its users would upload a photograph; (2) LoopNet would review the photo; and
19 (3) when a LoopNet employee accepted the photo, it would be automatically posted to
20 LoopNet's web site. The Fourth Circuit held that even the intermediate review by LoopNet
21 employees did not constitute volition, that "an ISP who owns an electronic facility that responds
22 automatically to users' input is not a direct infringer," and that "the Copyright Act [requires]
23 some aspect of volition and meaningful causation - as distinct from passive ownership and
24 management of an electronic Internet facility. . ." *CoStar*, 373 F.3d at 550. Mr. Choudhry
25 passively manages a web site that responds automatically to Make Magazine's updates; even if
26 the Infographic had been copied to his server, he engaged in no volitional act related to the
27 Infographic, because it appeared automatically at his website due to the operation of Make
28 Magazine's RSS feed.

1   Finally, in *Sega Enters. Ltd v. MAPHIA*, 948 F. Supp. 923, 931-32 (N.D. Cal. 1996),
2   there was no inline linking: "copies were made when the Sega game files were uploaded to, or
3   downloaded from, [defendant's] BBS. Thus, copying by someone [was] established." *Sega*, 948
4   F. Supp. at 932. Nevertheless, the court held there could be no direct infringement because Sega
5   had not shown that the defendant "himself uploaded or downloaded the files, or directly caused
6   such uploading or downloading to occur." *Id*. Even the defendant's operation of a bulletin board
7   service, with knowledge that infringement was occurring and solicitation of others to upload
8   infringing content, was insufficient to constitute direct infringement. The court held that
9   "[w]here the infringing subscriber is clearly directly liable for the same act, it does not make
10  sense to adopt a rule that could lead to the liability of countless parties whose role in the
11  infringement is nothing more that setting up and operating a system that is necessary for
12  functioning of the Internet." *Id*. at 932 (quoting *Netcom*, 907 F. Supp at 1372-73). In this case,
13  Make Magazine stands in the shoes of the subscribers. Even if Mr. Choudhry's software had
14  copied the allegedly infringing Infographic, it is contrary to law to hold Mr. Choudhry liable
15  merely for setting up and operating a system that automatically published a third party's RSS
16  feed on a generalized basis.

17  Mr. Choudhry's has submitted a sworn declaration affirming his lack of volitional
18  conduct – he merely configured his vBulletin forum software, in June 2009, to regularly retrieve
19  RSS feed updates from Make Magazine and automatically post them to the RSS:Gadgets forum
20  on his website. [Choudhry Decl. at 4; Defs.' Mot. to Dismiss at 14; Defs.' Reply at 10]. It is
21  Make, not Mr. Choudhry, who chose to publish the allegedly infringing Infographic. This is
22  precisely the fact pattern that was at issue in *Netcom*, wherein Netcom's mere subscription to the
23  Usenet service where the infringing content appeared was not sufficient to confer liability.

24  Righthaven has not offered a shred of evidence to contradict Mr. Choudhry's declaration,
25  relying instead on vague doubts as to Mr. Choudhry's credibility and the hope of discrediting his
26  sworn statement through later discovery. [Defs.' Reply at 2-3, 9-10, 16-17.] Vague doubts and
27  questions that merely express an "unspecified hope of undermining [Mr. Choudhry's]
28  credibility" are insufficient to defeat summary judgment. *Nat'l Union Fire Ins. Co v. Argonaut*

1  *Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). Rather, Righthaven "must come forward with 'specific

2  facts showing that there is a genuine issue for trial.'" *Matsushita Elec Indus. v. Zenith Radio*

3  *Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Here, it has failed to do so.

4       For the above-stated reasons, Mr. Choudhry respectfully asserts that the Court clearly

5  erred in holding that Defendants' volitional conduct argument "depends on the court concluding

6  that, as a matter of law, the alleged infringement here was actually 'inline linking.'" [Order, at

7  4.] Because the facts regarding inline linking are not relevant to the volitional conduct analysis,

8  the Court also erred to the extent its finding that Righthaven raised genuine issues of material

9  fact was based on those facts relevant to inline linking, rather than the narrow subset of

10 undisputed facts relevant to volition. Accordingly, Mr. Choudhry respectfully requests that the

11 Court reconsider Section I.B.ii of its Order and grant summary judgment in favor of Mr.

12 Choudhry on the basis that he engaged in no volitional conduct with respect to the Infographic.

14 Dated: May 13, 2011.    RIDDER, COSTA & JOHNSTONE LLP

16     By:   /s/ Chris K. Ridder
          CHRIS K. RIDDER
          CA State Bar Number: 218691 (*pro hac vice*)
          12 Geary Street
          San Francisco, CA 94108

19 CHAD A. BOWERS, LTD.

20     By:   /s/ Chad A. Bowers
          CHAD A. BOWERS
          NV State Bar Number: 7283
          3202 W. Charleston Blvd.
          Las Vegas, Nevada 89102

23 Attorneys for Defendant and Counterclaimant AZKAR CHOUDHRY and Defendant PAK.ORG.

# CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a representative of Azkar Choudhry and Pak.org and that on this 13th day of March, 2011, I caused the DEFENDANT AND COUNTERCLAIMANT AZKAR CHOUDHRY'S MOTION FOR RECONSIDERATION OF MAY 3, 2011, ORDER DENYING IN PART DEFENDANTS' AND COUNTERCLAIMANT'S MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT to be served by the Court's CM/ECF system.

RIDDER, COSTA & JOHNSTONE LLP
By: /s/ Chris K. Ridder
Chris K. Ridder
CA State Bar Number: 218691
(*pro hac vice*)
12 Geary Street
Suite 701
San Francisco, CA 94108

*Attorneys For Defendant and Counterclaimant Azkar Choudhry and Defendant Pak.org*